IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) )  Case No. 13-CV-156-JHP-FHM |
| SAMSON INVESTMENT COMPANY, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Before the Court are Travelers Casualty and Surety Company of American ("Travelers") Motion for Summary Judgment (Dkt. No. 59); Samson Investment Company's Response in Opposition thereto (Dkt. No. 61); and Travelers Reply to Samson's Response (Dkt. No. 66). After review of the briefs, and for the reasons stated below, Travelers Motion for Summary Judgment (Dkt. No. 59) is **GRANTED**.

**BACKGROUND**

**A.   Procedural History**

On March 15, 2013, Travelers, the surety, filed suit against Samson, the principal, seeking a preliminary injunction, specific performance, and reimbursement for any losses suffered under bonds issued on behalf of Samson.   After this Court granted the preliminary injunction, Travelers moved for summary judgment (Dkt. No. 59), Samson responded (Dkt. 61), and Travelers filed a reply and supplemental motion (Dkt. 66; 99).

In its motion, Travelers requested two forms of relief.   First, Travelers seeks a specific performance of the Indemnity Agreement so that the Letter of Credit remains in effect until the

last release is received and approved by Travelers.[1]   Second, Travelers seeks to draw down on the Letter of Credit in the amount of fees and expenses it incurred.[2]

### B. Factual Background

At the request of Samson, Travelers, as surety, issued over 100 bonds for Samson in favor of various obligees (the "Bonds").  In connection with issuance of the Bonds by Travelers, Samson executed a General Contract of Indemnity dated February 19, 2009 (the "Indemnity Agreement").  The Indemnity Agreement provides Travelers with, among other things, an unqualified right to request and thereafter have Samson discharge Travelers from the Bonds and/or collateralize any and all remaining liability under the Bonds. In this regard, the Indemnity Agreement provides:

> Indemnitors shall, within thirty (30) days of receipt of Company's written demand ("Discharge Demand"), procure the full and complete discharge of the Company from any and all Bond(s) by providing competent written evidence of discharge satisfactory to Company, in its sole discretion.  If Indemnitors fail to provide the aforementioned discharge[,] Indemnitors shall, within an additional seven (7) days, provide Company with an irrevocable letter of credit in form, content and by a bank acceptable to the Company.

(Dkt. 59-1, Exhibit A, Indemnity Agreement ¶ 5(a)).

Under the Indemnity Agreement, Samson also expressly acknowledged and agreed that if Samson breached its obligation to provide Travelers with the requested collateral, Travelers would have no adequate remedy at law, thus entitling Travelers to specific performance of that obligation:

---

[1] The Court notes that the Letter of Credit was originally posted in the amount of $1,880,828.00.  Due to the releases subsequently procured by Samson and the cooperation among the parties, the Letter of Credit has been reduced to $165,000.

[2] To date, Travelers has incurred $75,621.46 in fees and expenses.

> Indemnitors waive, to the fullest extent permitted by law, each and every right they may have to contest this requirement. Indemnitors stipulate and agree that Company will not have an adequate remedy at law should Indemnitors fail to post said letter of credit and further agree as a result that Company is entitled to specific performance of this provision … .

(Indemnity Agreement ¶ 5(b)).

The Indemnity Agreement also provides:

> If Company has or obtains collateral or letters of credit, Company shall not have any obligation to release collateral or letters of credit or turn over the proceeds thereof until it shall have received a written release in form and substance satisfactory to Company with respect to each and every Bond. Any collateral or letters of credit provided to Company by any Indemnitor or any third party, or the proceeds thereof, may be applied to any Loss.

(Indemnity Agreement ¶ 9)."Loss," as it is defined in the Indemnity Agreement, includes "interest, court costs and counsel fees, and any expense incurred or sustained by reason of making any investigation." (Indemnity Agreement ¶ 5(b)). The Indemnity Agreement also included a *prima facie* evidence clause that provides that "originals or photocopies of claim drafts, or of payment records, kept in the ordinary course of business, including computer printouts, verified by affidavit, shall be prima facie evidence of the fact and amount of such Loss." (Indemnity Agreement ¶ 2(a)).

On November 21, 2012, December 3, 2012, January 22, 2013, and February 22, 2013, Travelers made demand on Samson to procure the full and complete discharge of Travelers from the Bonds as provided by the terms of the Indemnity Agreement. Travelers contends that Samson, however, failed to fulfill its contractual obligations by failing to procure the full discharge of Travelers obligations under the Bonds and refusing to post an irrevocable letter of credit upon Travelers' request.

Travelers thereafter filed the current action, seeking specific performance of certain conditions of the Indemnity Agreement and seeking its losses incurred under the Bonds.

Travelers also moved for a preliminary injunction. (Dkt. No. 2; 3). At a hearing on June 5, 2013, the parties presented evidence and oral arguments on the issue of compelling Samson to provide the irrevocable letter of credit pursuant to the Indemnity Agreement. Magistrate Judge McCarthy filed a Report and Recommendation recommending that Travelers be granted a preliminary injunction (Dkt. No. 34), which was subsequently adopted by this Court (Dkt. No. 39; 48). Pursuant to the Court's Order, Samson provided the letter of credit on August 20, 2013 (the "Letter of Credit").

In order to help facilitate obtaining additional releases, Samson brought third-party claims against the remaining obligees. The process worked and Samson dismissed all third-party obligees. Samson now awaits one more release – Travelers Bond No. 104104182 for the State of Oklahoma in the penal sum of $10,000.

## DISCUSSION

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to a material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The party seeking summary judgment must first identify grounds to show the absence of any genuine material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to the respondent who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does, indeed, exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

A.   **Indemnity Agreements under Oklahoma Law**

An indemnity contract is interpreted under Oklahoma law according to the general rules of contract interpretation. *Wallace v. Sherwood Constr. Co., Inc.*, 877 P.2d 632, 634 (OKLA. APP. 1994) (citing *Luke v. Am. Sur. Co. of N.Y.*, 114 P.2D 950 (OKLA. 1941)); *see also* OKLA. STAT.

ANN. TIT. 15, § 427 (2005). The intention of the parties must be ascertained based upon the whole contract, and the intent of the parties will be given effect if it can be done within the bounds of the law. *Id; see also* OKLA. STAT. ANN. TIT. 15, § 152 (2005) ("A contract must be so interpreted as to give effect to the mutual intention of the parties, as if existed at the time of contracting, so far as the same is ascertainable and lawful."); OKLA. STAT. ANN. TIT. 15, § 157 (2005) ("The whole of a contract is to be taken together, so as to give effect to every part … .").

**B.    Specific Performance**

The granting of specific performance necessarily involves a finding that the elements of a valid contract are present, and a weighing of the equities in favor of the respective parties. *Tickel v. Felton*, 1959 OK 206, 345 P.2d 901, 902; 25 WILLISTON ON CONTRACTS § 67:89 (4th ed.); RESTATEMENT (SECOND) OF CONTRACTS 371(1) ("[S]pecific performance of a contract duty will be granted in the discretion of the court against a party who has committed . . . a breach of the duty").

The parties do not dispute the existence and validity of the Indemnity Agreement.  In the agreement, Samson contractually (1) agreed to procure full and complete discharge of Travelers from the Bonds; (2) waived the right to contest this requirement; (3) stipulated and agreed that Travelers has no adequate remedy at law; and (4) stipulated and agreed that Travelers is entitled to specific performance.  (Indemnity Agreement ¶5).

Specific performance is routinely granted to sureties.  A recent case, *Travelers Cas. & Sur. Co. of Am. v. Winmark Homes, Inc.*, involved not only the same issues—a motion for summary judgment for specific performance and attorneys' fees—but also an identical indemnity agreement.  2013 WL 2150920 (11th Cir. May 20, 2013).  The Eleventh Circuit held that given the "defendants' promise to provide a letter of credit upon demand … Travelers is entitled

to specific performance in the form of an irrevocable letter of credit and to its attorneys' fees." *Id*. at *4.

Courts will generally grant specific performance if the surety can provide that: (1) it has no adequate remedy at law; (2) the indemnity agreement is just and reasonable and supported by adequate consideration; (3) the terms of the indemnity agreement are sufficiently definite to allow enforcement by the court; and (4) the performance sought is substantially identical to that promised in the indemnity agreement. *See* Meeker, *Surety's Right to Specific Performance of Indemnity Agreements*, CONSTR. LAW., (Spring 1982). With regard to the first consideration, Sampson specifically stipulated in the Indemnity Agreement that Travelers has no adequate remedy at law. (Indemnity Agreement ¶ 5). The remaining three considerations are not in dispute. (*See,* Dkt. No. 25; 38).

Significantly, Samson waived "to the fullest extent permitted by law, each and every right that they may have," to contest the discharge demand requirement, stipulated that Travelers "will not have an adequate remedy at law," and agreed that Travelers is "entitled to specific performance of this provision." (Indemnity Agreement ¶ 5(b)). Samson agreed to provide bond discharges upon demand in exchange for these bonds, and agreed that Travelers would be entitled to specific performance.

While Samson opposes Travelers' motion, it provides no legal authority to overcome the language of the Indemnity Agreement and authority cited by Travelers. Accordingly, the Court finds that Travelers is entitled to continued specific performance of the Indemnity Agreement. Further, the Letter of Credit shall remain in effect until the final bond—Travelers Bond No. 104104182—has been released.

**C.     Attorneys' Fees**

Next, Travelers seeks its fees, as losses, under the Indemnity Agreement. Samson contractually promised that it would:

> Indemnify and exonerate Company from and against any and all loss, cost and expense of whatever kind which it may incur or sustain as a result of or in connection with the furnishing of Bond(s), the assumption of obligations by Company of Bond(s), and/or enforcement of this Agreement, including unpaid premiums, interest, court costs and counsel fees, and any expense incurred or sustained by reason of making any investigation … .

(Indemnity Agreement ¶ 5(b)).

Attorneys' fees are typically treated as losses under indemnity agreements. Accordingly, courts nationwide have awarded attorneys' fees pursuant to the unambiguous terms of the Indemnity Agreement. *Travelers Cas. & Sur. Co. of Am. v. Winmark Homes, Inc.*, 11-15950, 2013 WL 2150920 (11th Cir. May 20, 2013)("Travelers submitted payment records of its attorneys' fees in the form of a computer printout verified by affidavit, thereby meeting its *prima facie* burden.")

The Indemnity Agreement also included a *prima facie* evidence clause that provides that "originals or photocopies of claim drafts, or of payment records, kept in the ordinary course of business, including computer printouts, verified by affidavit, shall be prima facie evidence of the fact and amount of such Loss."   (Indemnity Agreement ¶ 2(a)).

The *prima facie* evidence clause in an indemnity agreement is intended to aid a surety's ability to prevail against indemnitors on a summary judgment basis. Phillip L. Bruner & Patrick J. O'Connor, Jr., BRUNER & O'CONNOR ON CONSTRUCTION LAW, Vol. 3, §10:105 (2002). This clause shifts the evidentiary burden to Samson to prove whether Travelers made any payments in bad faith.   Samson provides no evidence or allegations to this effect.

Travelers submitted a payment summary of its fees and expenses verified by affidavit, thereby meeting its *prima facie* burden.

Samson provides no rebuttal evidence, which is fatal to its opposition of these fees. Addressing the exact same indemnity agreement, the Court in *Travelers Cas. & Sur. Co. of Am. v. Winmark Homes, Inc.*, affirmed the trial court's summary judgment after noting that the defendants "did not submit any evidence disputing the fees requested." The Court held:

> Based on the record before us, we agree with the district court that Travelers is entitled to an award of attorneys' fees and expenses under the indemnity agreement because it presented *prima facie* evidence of its loss and because the Winmark defendants did not provide any rebuttal evidence.

518 Fed. Appx. 899, 903-04 (11th Cir. 2013).

By application of the *prima facie* clause under the Indemnity Agreement, the only evidence before this Court supports the award of $75,621.46 to Travelers for attorneys' fees and expenses incurred to date.

Pursuant to paragraph 9 of the Indemnity Agreement, Travelers may reduce the letter of credit by the amount of fees incurred. In the event an appeal is made, under the Indemnity Agreement, Travelers may hold the Letter of Credit to ensure it is sufficiently protected from additional losses, including appellate attorneys' fees and expenses.

## CONCLUSION

After review of the briefs, and for the reasons stated below, Travelers Motion for Summary Judgment (Dkt. No. 59) is **GRANTED**. With all issues in this case now resolved, Travelers is ordered to submit a proposed form of final judgment within fifteen (15) days from the date of this Order.

James H. Payne
United States District Judge
Northern District of Oklahoma